**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorney for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DIUGUID, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SUPPLYING DEMAND, INC. d/b/a LIQUID DEATH | ) ) ) ) |
| Defendant. | ) ) ) |

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Ronald Diuguid ("Plaintiff"), through undersigned counsel, individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Supplying Demand, Inc. d/b/a Liquid Death ("Defendant" or "Liquid Death"), for restitution, damages, injunctive relief and any other available legal or equitable remedies resulting from the unlawful actions of Defendant. Plaintiff's allegations are based upon, *inter alia*, the investigation made by his counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiff which are based upon his personal knowledge.

## NATURE OF THE CASE

1.     This case arises from Defendant's unlawful and deceptive representations regarding its product, Liquid Death. Defendant entices consumers to purchase its product by falsely advertising that it would donate a portion (at times, specifically ten percent) of the profits from *each can sold* to

1

"fight plastic pollution." In reality, Defendant employs misleading language designed to conceal the true scope of its obligations, falsely suggesting that donations are contingent on the company's overall profitability. This artifice allows Defendant to evade its promised charitable contributions while misleading consumers who reasonably rely on its representations.

2.    Defendant owns and markets Liquid Death, one of the most popular beverage companies on the planet. Defendant offers an array of beverage options, including mountain water, soda-flavored sparkling water, iced tea, and sparkling energy.

3.    In the highly competitive beverage industry, companies often seek to gain an unfair advantage by misleading consumers about the nature, quality, or social impact of their products. Launching a successful beverage brand requires not only a compelling product but also a strong marketing strategy that convinces consumers that the product is distinct from its competitors. Consumers rely on these representations when deciding which product to purchase, making such advertising materially important to their choices. Misleading statements regarding a product's charitable contributions, sustainability, or social impact are therefore particularly influential in guiding consumer decisions.

4.    Famously, Liquid Death prominently packages its products in aluminum cans, representing that its product is infinitely recyclable and is part of the company's mission in bringing about "Death to Plastic Bottles."

5.    Consistent with its stated mission to end the consumption of plastic bottles, Defendant prominently represented (and, in some instances, still represents) on its bottles and website that: "We donate 10% of the profits from every can sold to help kill plastic pollution." This is an explicit, per-sale, defined % representation, conveying to a reasonable consumer that each can purchased directly generates a 10% donation of the profits. Such a claim is particularly compelling to environmentally conscious consumers, who are likely to rely on this promise when deciding to purchase Liquid Death

over competing products.

6.      Upon information and belief, Defendant did not, in fact, "donate 10% of the profits from every can sold to help kill plastic pollution." Instead, Defendant manipulated the term "profits" to evade its obligations and mislead consumers. Defendant relies on its overall unprofitable financial status—incorporating unrelated expenses and liabilities—to justify withholding the promised donations, thereby deceiving consumers about the charitable impact of their individual purchases. In essence, Defendant contends that if the company as a whole is not profitable, it is not required to make any such donations.

7.      Defendant also knows the company, at first, may never achieve overall profitability and therefore will never be required to make the promised donations. Regardless, this representation is inherently deceptive, as it creates the false impression that each can sold results in a contribution toward combating plastic pollution. Such conduct constitutes a material misrepresentation in advertising that is likely to influence consumer purchasing decisions.

8.      Reasonable consumers, unaware of Defendant's financial situation, are led to believe that each can purchased generates the represented donation, and they rely on this representation when deciding to purchase Defendant's products.

9.      The unlawfully and deceptively represented products and misrepresentations are sold through multiple channels, including, but not limited to, third party merchants operating both brick-and-mortar locations and online platforms. These include, but are not limited to, Target, Walmart, Kroger, and numerous other retailers throughout the United States and abroad.

10.     Defendant's labeling, marketing, and sale of products containing the foregoing misrepresentations has caused actual injury to Plaintiff and the Class. Plaintiff and Class members relied on these deceptive representations when deciding to purchase Defendant's products, paying a premium to do so, and would not have done so, or would have paid less—had they known the

representations were false.

11.     Plaintiff, individually and on behalf of all other similarly situated, seeks all available remedies at law and equity, including damages, restitution, declaratory, and injunctive relief.

**PARTIES**

12.     Plaintiff Ronald Diuguid is a natural person and, at all times material hereto, has been a citizen of Valencia, California, where he is also domiciled.

13.     Defendant Supplying Demand, Inc. d/b/a Liquid Death is a company formed and organized under the laws of Delaware and with its headquarters at 4077 Redwood Avenue, Los Angeles, CA 90066. Supplying Demand, Inc. launched Liquid Death in 2019. On information and belief, Supplying Demand, Inc. owns, operates, and controls the Liquid Death brand and actively participates in the unlawful conduct described herein. Liquid Death conducts business within the venue of this District and throughout California generally.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

15.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District. Defendant does business and is authorized to conduct business in this District. Defendant sells its products to consumers in California, including to Plaintiff.

16.     Moreover, Defendant conducts business in California and actively disseminates targeted advertisements within the state with the intent of promoting and selling its products and services to consumers there. As such, Defendant does business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market.

CLASS ACTION COMPLAINT

17.     Defendant has purposefully directed its activities toward this District.

18.     Defendant has purposefully availed itself of the privileges of conducting activities in this District.

19.     Plaintiff's claim arises out and relates to Defendant's forum-related activities.

20.     Venue is proper in this District under the provision of 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial District, Defendant is headquartered and subject to personal jurisdiction in this District, and Defendant transacts business in this District. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District.

21.     Plaintiff alleges, upon information and belief, that Defendant conducts professional and commercial activities in California on a substantial, continuous, and systematic basis and therefore Defendant is subject to the general jurisdiction of the courts of this state.

22.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### I.     *Defendant's Business*

23.     Defendant launched the Liquid Death brand in 2019. Since then, Liquid Death has become one of the world's most popular beverage brands in the world.

24.     Liquid Death markets its products utilizing "internet-savvy" methods of humor and satirical internet "memes" to lure consumers into purchasing its products. The company represents that "[f]or centuries, all the funniest and coolest marketing and branding was only done for unhealthy products like beer, fast food, candy, and junk food. But those days are over. Soon, Liquid Death will use health and humor to conquer the world and make all beverages Liquid Death for eternity."[1]

---

[1] https://liquiddeath.com/pages/manifesto (last accessed November 14, 2025)

CLASS ACTION COMPLAINT

25.    In 2024, the company disclosed that it had achieved $333 million in revenue[2], and that its products could be found in over 113,000 retail outlets domestically and abroad.[3] For the company, this represented "triple-digit" growth for the third-consecutive year, helping it become the fastest-growing water and iced tea brand.[4]

26.    Due to its enormous success and expedited rate of growth, the Company was able to raise a new round of investment in 2024, which valued the company at $1.4 billion.[5]

27.    One of Liquid Death's main selling points is its branding. According to the company's founder and chief executive officer, Mike Cessario, the name "Liquid Death" refers to the idea of "murdering your thirst," as well as "death to plastic."[6]

28.    Specifically, Liquid Death's mission of bringing "death to plastic bottles" is one of the company's main prominent marketing tools. Liquid Death even has a "Death to Plastic Bottles" tab on its website, which provides facts to consumers about the negative impacts of plastic on the environment and how Defendant attempts to combat that through its aluminum can packaging. An example of this slogan on its website page may be seen below:

---

[2] https://taptwicedigital.com/blog/liquid-death (last accessed November 14, 2025)

[3] https://www.nbcnews.com/business/business-news/liquid-death-became-billion-dollar-beverage-brand-rcna143037 (last accessed November 14, 2025)

[4] Id.

[5] Id.

[6] Id.

CLASS ACTION COMPLAINT



29.    These marketing materials signaling "death to plastic" are prominently advertised during the course of the company's normal operations. A couple examples of how the company markets its products with the use of this slogan may be seen below:



30.     Defendant's slogan aligns with its stated goal of encouraging consumers to consider environmental sustainability when purchasing its products. Andy Pearson, the vice president of creative at Liquid Death, described the company as "[a] brand that was healthy and fun but also one that was educating and pushing people to think more critically about their choices when it comes to sustainability."[7] Such representations are material and play a critical role in influencing consumers' purchasing decisions, particularly those who prioritize environmental responsibility.

**II.     *Defendant Uses the Promise of Donations to Induce Consumers to Purchase its Products.***

31.     As part of its stated mission to bring about "Death to Plastic", Defendant represents, both on its product packaging and through its media channels, including its website, that it will donate 10% of the profits from every can sold. These representations convey a clear, per-purchase commitment to consumers that each purchase will directly support charitable causes.

32.     Specifically, Defendant expressly represents that it will donate "10% of the profits from ***every can sold*** to help kill plastic pollution." (emphasis added). This message is plastered across each can of Defendant's product and on its website. An example of this representation may be seen on Defendant's product below (in gold font, underneath the hashtag of "#DeathToPlastic"):

---

[7] https://aim2flourish.com/innovations/death-to-plastic (last accessed November 14, 2025)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



33.     Defendant reiterates this same charitable pledge across its marketing and media

CLASS ACTION COMPLAINT

channels, including, but not limited to, its website, where it also represented that it would donate "10% of the profits from every can."[8] This representation reinforces Defendant's uniform message that each individual purchase directly contributes to charitable causes, as illustrated in the example below:

34.     As shown above, Defendant expressly represents that "every time" a consumer "buys a can of Liquid Death," the company will donate "10% of the profits from every can" to "a handful of non-profits who are fighting the plastic problem and bringing clean drinking water to people in need." This statement conveys a clear and unequivocal ***per-purchase*** commitment—one that reasonable consumers understand to mean that each can sold triggers a corresponding charitable donation. The representation does not depend upon, nor does it disclose, any contingency tied to the company's overall profitability.

35.     In truth, Defendant's representations are false and misleading. Despite publicly touting that it donates 10% of the profits from every can sold, upon information and belief, Defendant has failed to honor that promise. Defendant exploits this self-imposed "unprofitability" status as a pretext

---

[8] Liquid Death, *Kill Plastic*, Wayback Machine (archived on June 20, 2022) https://web.archive.org/web/20220620190908/https://liquiddeath.com/pages/death-to-plastic

to avoid making the very donations it advertises, thereby misleading reasonable consumers into believing that each purchase directly contributes to charitable causes, when in fact it does not make donations at this price.

36.     Defendant's misrepresentation is material to reasonable consumers. In a saturated beverage market, where companies vie for consumer loyalty through claims of social and environmental responsibility, Defendant's promise of charitable donations serves as a key differentiator designed to confer an unfair competitive advantage. Through these representations, Liquid Death deliberately appeals to environmentally conscious consumers, including individuals who prioritize sustainability, ethical sourcing, and social impact in their purchasing decisions, by falsely suggesting that each purchase meaningfully contributes to environmental and humanitarian causes.

37.     Environmentally conscious consumers, such as Plaintiff and the members of the proposed Class, purchase beverages not only for their quality or branding, but also based on a company's claimed social and environmental commitments. Defendant's promise that each purchase would generate a charitable donation was a material factor in Plaintiff's and Class members' purchasing decisions. Relying on these representations, Plaintiff and Class members reasonably believed their purchases would directly advance environmental and humanitarian causes. Accordingly, when presented with the choice between Defendant's product and competing beverages, they elected to purchase Defendant's product in reliance on Defendant's false and misleading statements.

38.     Defendant's false and misleading representations regarding Liquid Death's purported donations of "10% of the profits of each can sold" to fight plastic pollution deceived consumers into purchasing a product that did not meet their expectations or align with their values. This deception caused concrete financial harm to Plaintiff and Class members, who paid a price premium for a

product falsely marketed as supporting environmental causes. Defendant's misconduct not only deprived consumers of the promised charitable benefit but also undermined public trust in companies that claim to engage in socially responsible practices. As a result, Plaintiff and Class members purchased a product that lacked the material, donation-based benefit they reasonably believed they were supporting through their purchases.

39.     As a result of Defendant's false, misleading, and deceptive labeling and advertising, Plaintiff and Class members were misled for years into making both initial and repeat purchases of Defendant's products under the reasonable belief that their purchases would result in meaningful donations to charitable organizations supporting environmental and humanitarian causes. In reality, no such substantial donations occurred, and Defendant's misrepresentations induced ongoing purchases that Plaintiff and Class members would not have made, or would have made only at a lower price, had the truth been known.

40.     Had Plaintiff and other similarly situated consumers been made aware that Defendant would fail to donate 10% of profits of each can sold to charities combatting plastic pollution, they would not have purchased or would have paid less for Defendant's product. In fact, Defendant recognized as much when, at some point during the class period, Defendant changed its representation on its cans to "a portion of the profits of each can sold." An example of Defendant's revision to its product labeling and corresponding charitable representation is shown below:





41.    This change illustrated above was a tacit admission that its previous advertisement was misleading to its consumers. Even this new representation is false as Defendant never donated the promised profits from the sale of its products, or, at most, has contributed only a negligible, *de minimis* amount that falls far short of its previously advertised profits per can.

42.    On information and belief, Defendant either charged a premium for its deceptively marketed product compared to its competitors or gained a significant competitive advantage by misleading consumers into choosing its products over others based its false donation misrepresentation. Federal and California laws are specifically designed to protect consumers from such false, deceptive, misleading, and unlawful representations, as well as from predatory business practices that unfairly manipulate consumer choice.

### FACTS SPECIFIC TO PLAINTIFF

*Plaintiff's Experience*

43.    In or around 2022, Plaintiff searched for beverages wherein Plaintiff found Defendant's product available for sale.

CLASS ACTION COMPLAINT

44.     Plaintiff came across Defendant's product and found Defendant's representation that it would donate 10% of the profits of every can sold to non-profits to combat plastic pollution.

45.     Plaintiff is environmentally conscious and prioritizes buying products that are sustainably sourced. When Plaintiff observed Defendant's representation, Plaintiff decided to buy Liquid Death beverages over other options from other beverage manufacturers in 2022 and 2023.

46.     Plaintiff's reliance on Defendant's representations was reasonable given the circumstances, as ordinary consumers are not experts in beverage product profitability. Plaintiff had no reason to doubt such claims by Defendant or suspect that Defendant would deliberately misrepresent the contents of a product, especially when such claims and representations are prominently displayed on the product's labels and in its marketing.

47.     Defendant's representation regarding its promise to donate 10% of the profits of every can sold is unlawful, unfair, deceptive, and misleading, as Defendant failed to fulfill its donation responsibilities, despite allowing consumers, such as Plaintiff, to rely upon this representation in choosing to purchase Defendant's product.

48.     Defendant's representations were material to Plaintiff's decision to purchase its product.

49.     In deciding to purchase Liquid Death, Plaintiff relied on the labeling, marketing, and/or advertising prepared and approved by Defendant, as disseminated through the Liquid Death products, packaging, and marketing containing the misrepresentations alleged herein.

50.     Throughout the relevant time period, Plaintiff spent hundreds of dollars purchasing Defendant's products in reliance on Defendant's representations that 10% of the profits from each can sold would be donated to efforts combating plastic pollution. Plaintiff made these purchases with the good-faith belief that his spending would contribute to environmental causes, when in fact Defendant failed to make the promised donations.

51. Had Plaintiff known that Defendant would fail to fulfill its donation promises, Plaintiff would not have purchased Liquid Death or paid less for the product. In other words, Defendant's promise of donation was important to Plaintiff's decision to purchase its product.

52. Plaintiff believed, at the time of purchase, that the Liquid Death product would result in a donation of 10% of the profits from each can sold by the company to non-profit organizations in fighting plastic pollution.

53. Each time Plaintiff and putative Class members purchased Liquid Death, they relied on Defendant's representations in their purchasing decisions, as is typical of most U.S. consumers.

54. Plaintiff was harmed because Defendant took Plaintiff's money due to its unlawful, false, unfair, and deceptive misrepresentations of its product, including the products Plaintiff purchased.

55. Consequently, Plaintiff and other similarly situated consumers were deceived by Defendant's false, unlawful, unfair, and deceptive acts.

56. As a result of Defendant's unfair, unlawful, and deceptive acts, Defendant was unjustly enriched.

57. Although Plaintiff would like to purchase Liquid Death in the future, Plaintiff cannot be certain that he will not be misled again unless and until Defendant accurately labels and represents its product.

## CLASS ALLEGATIONS

58. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of himself.

59. Plaintiff is a member of and seeks to represent a National Class defined as follows:

> All persons in the United States who purchased one or more of Defendant's products that were marketed or represented, on the product packaging, advertising, or other marketing materials, as contributing "10% of the profits from each can sold" or making any similar

CLASS ACTION COMPLAINT

representation regarding donations to charitable or social causes.

60.    Plaintiff is also a member of and seeks to represent a California Sub-Class, defined as:

All persons in California who purchased one or more of Defendant's products that were marketed or represented, on the product packaging, advertising, or other marketing materials, as contributing "10% of the profits from each can sold" or making any similar representation regarding donations to charitable or social causes.

61.    The National Class and the California Sub-Class are referred to collectively as the "Classes."

62.    Excluded from the Classes are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

63.    Plaintiff reserves the right to modify the proposed definition of the Classes, including but not limited to expanding the Classes to protect individuals and to assert additional sub-classes as warranted by additional investigation.

64.    **Numerosity.** Upon information and belief, there are thousands of Class members, so joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiff currently but may be ascertained from Defendant's books and records and other third-party sources.

65.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

(a) The nature, scope, and operations of the wrongful practices of Defendant;

(b) Whether Defendant engaged in the conduct alleged in the Complaint;

CLASS ACTION COMPLAINT

(c)  Whether Defendant actually made donations of every can sold as alleged in the Complaint;

(d)  Whether Defendant knew or should have known that its business practices were unfair and/or unlawful;

(e)  Whether Defendant violated statutes analogous to those alleged herein applicable;

(f)  Whether Defendant violated the CLRA;

(g)  Whether Defendant violated the FAL;

(h)  Whether Defendant's conduct was "unlawful" as that term is defined in the UCL;

(i)  Whether Defendant's conduct was "unfair" as that term is defined in the UCL;

(j)  Whether Defendant's conduct was "fraudulent" as that term is defined in the UCL;

(k)  Whether Defendant's conduct was "unfair, deceptive, untrue or misleading" as that term is defined in the UCL;

(l)  Whether Plaintiff and the other Class members were damaged by Defendant's conduct; and

(m) Whether Plaintiff and the other Class members are entitled to  restitution or other relief.

66.    **Typicality**. Plaintiff's claims are typical of the claims of the Classes because he was a consumer of Liquid Death who made purchases of its product as a result of Defendant's unlawful and wrongful conduct. The factual and legal basis of Defendant's liability to Plaintiff and to the other Class members are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the other members of the Classes have suffered harm and damages due to Defendant's unlawful and wrongful conduct.

67.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other

members of the Classes.

68.     **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

69.     **Final Declaratory or Injunctive Relief.** Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole.

**<u>FIRST CAUSE OF ACTION</u>**
**Unlawful & Unfair Business Practices in Violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**<u>(On behalf of Plaintiff and the California Sub-Class)</u>**

70.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of members of the California Sub-Class for Defendant's violations of the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

72.     Plaintiff and Defendant are "persons" within the meaning of the UCL Cal. Bus. & Prof. Code § 17201.

73.     Plaintiff has standing under the UCL because he suffered an injury in fact and lost money or property as a result of Defendant's unlawful and unfair conduct.

74.     "Unfair competition" is defined by Business and Professions Code Section § 17200 as

encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

75.     The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

76.     Through the conduct alleged in detail above and herein, Defendant engaged in unlawful, unfair deceptive and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### A. *"Unlawful"* Prong

77.     Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

78.     Defendant violated federal and California law by falsely advertising, marketing, labeling, and selling its product under the representation that 10% of the profits from each can sold would be donated to fighting plastic pollution, when they were not, while failing to disclose the true nature of Defendant's deceptive promise.

79.     Specifically, by manufacturing, distributing, and/or marketing its products with false, unlawful, unfair and deceptive claims, Defendant violates California's CLRA, Civil Code §§ 1750, *et seq.*; and Californias' FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

80.     Defendant falsely, unlawfully, unfairly, and deceptively represents that 10% of the profits from each can sold  would be donated to fighting plastic pollution when, in fact, they are not.

81.     Aside from the unlawful conduct described herein, Defendant has other reasonably available alternatives to advance its business interests, such as accurately, truthfully, and lawfully marketing, labeling, and selling its products.

82.     Instead, Defendant deliberately and deceptively misled and continues to mislead consumers through unlawful and unfair practices for its own economic gain.

### B.  *"Unfair"* Prong

83.     Defendant has engaged in acts of unfair competition prohibited by Cal. Bus. & Prof. Code §§ 17200, *et seq.*

84.     Defendant engaged in a pattern of "unfair" business practices that violate both the letter and the intent of the statutes. Defendant's conduct threatens an incipient violation of the law or violates the policy and spirit of the law by manufacturing, distributing, and/or marketing its products with false, unfair and deceptive claims.

85.     The utility of such conduct, if any, is vastly outweighed by the harm it inflicts, particularly through the manufacturing, distribution, and/or marketing of its products by means of false representations that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not.

86.     As a result of Defendant's misconduct: (1) the injury to consumers was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

87.     Without limitation, Defendant's conscious mislabeling and false unlawful marketing of its products constitute unlawful, unfair, and deceptive business practices, misleading consumers into believing that 10% of the profits from each can sold they buy would be donated to fighting plastic pollution when, in fact, it is not.

88.     Plaintiff could not have reasonably avoided the resulting injury.

### C.  *"Fraudulent"* Prong

89.     Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the members of the California Sub-Class to believe that it would donate 10% of the profits from each can

CLASS ACTION COMPLAINT

sold to fight plastic pollution.

90.     Defendant's products are falsely labeled and marketed to represent that 10% of the profits of each can sold would be donated to fighting plastic pollution when, in fact, they are not.

91.     These misrepresentations mislead consumers, including Plaintiff, into purchasing Defendant's product under the belief that 10% of the profits of each can bought would be donated to fighting plastic pollution when, in fact, they are not.

92.     Plaintiff relied upon this fraudulent representation when deciding to purchase Defendant's product over those offered by Defendant's competitors.

93.     Plaintiff believed, at the time of purchase, that the Liquid Death product would result in a 10% donation made by the company to non-profit organizations in fighting plastic pollution.

94.     Each time Plaintiff and California Sub-Class members purchased Liquid Death, they relied on Defendant's representations in their purchasing decisions, as is typical of most U.S. consumers

95.     Plaintiff and members of the California Sub-Class acted reasonably in purchasing Defendant's product based on their incorrect belief due to Defendant's representation that 10% of the profits from each can sold would be donated to fighting plastic pollution and that this representation as accurate, truthful, and lawful.

### D.  "*Unfair, Deceptive, Untrue or Misleading Advertising*" **Prong**

96.     Defendant's labeling, marketing and advertising is unfair, deceptive, untrue, and misleading, as it misleads consumers into believing that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not.

97.     Plaintiff, as a reasonable consumer, and the public are likely to be, and in fact were, deceived and misled by Defendant's labeling and marketing. They reasonably interpreted Defendant's representations according to their ordinary meaning—that 10% of the profits from each can sold

would be donated to fighting plastic pollution.

98.　　Plaintiff and members of the California Sub-Class are not sophisticated experts in beverage marketing practices, product labeling, or the regulations governing Defendant's products. They acted reasonably in purchasing Liquid Death based on their belief that Defendant's representations were accurate, truthful and lawful.

99.　　As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff and the members of the California Sub-Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased Defendant's product on the same terms had they known the true facts about Defendant's representations; (b) they paid a price premium for Defendant's product due to Defendant's alleged misrepresentations; and/or (c) they chose Defendant's product over the products of Defendant's competitors who made accurate, truthful and lawful representations about their products.

100.　　Defendant's alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to the public as Defendant continues to engage in unlawful conduct that harms consumers.

101.　　Such acts and omissions by Defendant are unlawful, unfair, and/or deceptive, constituting violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

102.　　Through its unfair and deceptive acts and practices, Defendant improperly obtained money from Plaintiff and members of the California Sub-Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the California Sub-Class, and to enjoin them from continuing to violate the UCL. Otherwise, Plaintiff and members of the California Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. Accordingly, Plaintiff and the Class lack an adequate remedy at law. Moreover, Plaintiff asserts this cause of action in the alternative to its claims for damages below.

103.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the conduct described above as Defendant's wrongful conduct is ongoing.

104.    Plaintiff also seeks rescission and an order requiring Defendant to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

105.    Additionally, Plaintiff and the California Sub-Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION
### Violation of CLRA, Cal. Civ. Code § 17500, *et seq*.
### (On behalf of Plaintiff and the California Sub-Class)

106.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

107.    Plaintiff brings this cause of action on behalf of himself and the California Sub-Class.

108.    California Civil Code Section 1750, *et seq.,* entitled the Consumer Legal Remedies Act ("CLRA"), enumerates various "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer" that are illegal in the State of California.

109.    The legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, inter alia, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair deceptive business practices and to provide efficient and economical procedures to secure such protections.

110.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of beverage products to consumers.

111.    Plaintiff and the members of the California Sub-Class are not sophisticated experts

23

with independent knowledge of product labeling, marketing practices and/or units of economic goods sold.

112.    Plaintiff and members of the California Sub-Class are consumers in California who purchased Defendant's products for personal, family or household purposes.

113.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

114.    The products that Plaintiff and other members of the California Sub-Class purchased from Defendant constitute "goods" as defined in Cal. Civ. Code § 1761(a).

115.    Plaintiff, and the members of the California Sub-Class, are each "consumer[s]" as defined in Cal. Civ. Code § 1761(d).

116.    Defendant's sale of its products to Plaintiff and members of the California Sub-Class were "transactions" within the meaning of Cal. Civ. Code. § 1761(e).

117.    Defendant violated, and continues to violate, the CLRA by misleading Plaintiff and members of the California Sub-Class into believing that 10% of the profits of each can bought would be donated to fighting plastic pollution when, in fact, they are not.

118.    Defendant's conduct violated the following provisions of Cal. Civ. Code § 1770

    a.    "Representing that goods or services have . . . characteristics . . . that they do not have";

    b.    "Using deceptive representations . . . in connection with . . . services"; and

    c.    "Advertising goods or services with intent not to sell them as advertised."

119.    Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

120.    Plaintiff and the Class relied on Defendant's advertisements, representations and/or omissions to purchase Defendant's product.

121.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class

members have suffered and will continue to suffer actual damages.

122. Defendant's wrongful conduct is ongoing and presents a continuing threat to Class members.

123. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel has or will contemporaneously notify Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demand that it rectifies the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

### THIRD CAUSE OF ACTION
**Violations of California's False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**
**(On behalf of Plaintiff and the California Sub-Class)**

124. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

125. The California False Advertising Law, codified at California Business & Professions Code section 17500, *et seq.* (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

126. Defendant's material misrepresentations and omissions concerning the nature of its donation promises used in its products, as alleged herein, violate Bus. & Prof. Code §§ 17500, *et seq.* Defendant knew or should have known that its misrepresentations and omissions were false, unlawful,

unfair, deceptive, and misleading. This includes the representations that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not.

127.     Plaintiff and members of the California Sub-Class suffered tangible, concrete injuries as a result of the Defendant's actions, as set forth herein, because they purchased Defendant's products in reliance on Defendant's misrepresentations.

128.     As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and members of the California Sub-Class are entitled to injunctive relief, equitable relief, and restitution.

129.     Through its unfair acts and practices, and as a direct and proximate result of Defendant's misleading advertisements, Defendant has improperly obtained money from Plaintiff and California Sub-Class members. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all class members, and to prevent Defendant from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiff, the California Sub-Class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (On behalf of Plaintiff and the Classes)

130.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

131.     Under California law, the elements of breach of express warranty include the seller's statement(s) constituting an affirmation of fact or promise or a description of the goods which is made part of the basis of the bargain, and breach of that warranty. Reliance is not required. *See Weinstat v. Dentsply Internat., Inc.*, 180 Cal.App.4th 1213, 1227 (2010).

132.     Defendant represented to Plaintiff and similarly situated consumers, through its labeling, advertising, and marketing, that 10% of the profits from each can sold would be donated to

fighting plastic pollution when, in fact, they are not.

133.    Defendant's representations regarding their donation promises that 10% of the profits from each can sold would be donated to fighting plastic pollution constitute affirmations of fact.

134.    Defendant's explicit promise that 10% of the profits from each can sold would be donated to fighting plastic pollution directly pertains to the nature and composition of its products. This representation forms a fundamental part of the bargain between Defendant and purchasers, influencing consumer purchasing decisions and expectations.

135.    Defendant's statements—prominently featured on the labeling and marketing of its products, constitutes an express warranty concerning the nature of the product's characteristics.

136.    Defendant breached its express warranty by falsely representing that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not.

137.    As a result of Defendant's breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the product or the difference between the product's actual value and the value they would have held if Defendant's representations regarding its products had been accurate, truthful, and lawful.

138.    Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries, as alleged herein.

139.    Had Plaintiff and Class members known the true nature of Defendant's products and promises, including that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not, they either would not have purchased Defendant's products or would not have paid the price Defendant charged.

140.    Defendant's misrepresentations were a substantial factor in causing Plaintiff and the Classes economic harm.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

**(On behalf of Plaintiff and the Classes)**

141.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

142.    Plaintiff pleads this claim in the alternative to the contract-based claim above.

143.    Plaintiff and the Class members have conferred a benefit upon Defendant in the form of the money they paid for the purchase of Defendant's deceptively represented product.

144.    Defendant appreciates and has knowledge of the benefits conferred upon it by Plaintiff and the Classes.

145.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiff and the Class members, which Defendant has unjustly obtained as a result of its unlawful misrepresentation that 10% of the profits from each can sold would be donated to fighting plastic pollution when, in fact, they are not. As it stands, Defendant has retained millions of dollars in profits generated from its unlawful misrepresentations and should not be permitted to retain those ill-gotten profits.

146.    Accordingly, Plaintiff and the Class members seek full disgorgement of all money Defendant has retained as a result of the wrongful conduct alleged herein.

**SIXTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(On behalf of Plaintiff and the Classes)**

147.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

148.    Plaintiff pleads this intentional misrepresentation cause of action in the alternative to the negligent misrepresentation cause of action stated below.

149.    Under California law, the elements of intentional misrepresentation are a false representation of a material fact, knowledge by the defendant that the representation was false or

reckless disregard for its truth, intent by the defendant to induce reliance, justifiable reliance by the plaintiff, and damages.

150.    Defendant knowingly and intentionally represented to the public, including Plaintiff and the Classes, through its marketing, advertising, labeling, and other means, that that 10% of the profits of each can it sells would be donated to fighting plastic pollution This representation is false and misleading because Defendant failed to fulfill its donation responsibilities.

151.    Defendant knew its representations were false because it maintains full control over the labeling and advertising of its products, including the ability to direct any donation of profits it generates from the sale of its products to combatting plastic pollution.

152.    Defendant acted intentionally by willfully and purposefully disseminating misrepresentations about its products through labeling, online and offline marketing, advertising, and social media.

153.    Defendant knew that its representations regarding its products were false, unlawful, unfair, deceptive, and/or misleading, yet continued to make such representations over a period of years.

154.    Defendant further knew that retailers were marketing its products in a false or misleading manner, as Defendant designed, manufactured, and affixed the product labeling to the Class Products before supplying them to retailers. Additionally, Defendant provided retailers with marketing materials that contained its false and misleading representations, thereby perpetuating the deception.

155.    Accordingly, Plaintiff and members of the Classes saw, believed, and relied on Defendant's misrepresentations when deciding to purchase the Class Products.

156.    As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members suffered damages in an amount to be determined at trial.

157.     By engaging in the acts described above, Plaintiff and members of the Classes are entitled to recover exemplary or punitive damages.

### SEVENTH CAUSE OF ACTION
**Negligent Misrepresentation**
**(On behalf of Plaintiff and the Classes)**

158.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–69 by reference as if fully set forth herein.

159.     Plaintiff pleads this negligent misrepresentation cause of action in the alternative to the intentional misrepresentation cause of action stated above.

160.     Under California law, the elements of negligent misrepresentation are a misrepresentation of a past or existing material fact without reasonable grounds for believing it to be true, with intent to induce reliance on the fact misrepresented, intent by the defendant that the plaintiff rely on the representation, justifiable reliance by the plaintiff, and damages.

161.     Defendant represented to the public, including Plaintiff and the Classes, through its marketing, advertising, labeling, and other means, that 10% of the profits of each can it sells would be donated to fighting plastic pollution. This representation is false and misleading because Defendant failed to fulfill its donation responsibilities.

162.     Defendant had no reasonable grounds to believe that its donation promises and representations were true because it maintains full control over the labeling and advertising of its products, including the ability to direct any donation of profits it generates from the sale of its products to combatting plastic pollution.

163.     Plaintiff alleges that Defendant made these negligent, false, and deceptive representations with the intent to induce the public, including Plaintiff and the members of the Classes, to purchase its products.

164.     Plaintiff and other similarly situated individuals saw, believed, and reasonably relied

upon Defendant's negligent, false, unfair, and deceptive misrepresentations, and purchased Defendant's products as a result of this reliance.

165.    At all relevant times, Defendant made the negligent, false, unlawful, unfair, deceptive and/or misleading misrepresentations alleged herein, knowing or reasonably having known that such representations were unlawful, unfair, deceptive, inaccurate, and misleading.

166.    As a direct and proximate result of Defendant's negligent, false, unlawful, unfair, and deceptive misrepresentations, Plaintiff and similarly situated consumers were induced to purchase Defendant's products, purchase more of them, pay a higher price, or choose them over competitors' products.

167.    Defendant's unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1.  For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiff as class representative and his counsel as class counsel;

2.  Awarding Plaintiff all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and to be determined by proof;

3.  Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

4.  Awarding Plaintiff reasonable attorneys' fees, costs, and other litigation expenses;

5.  Awarding pre- and post-judgment interest, as allowable by law;

6.  For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

7.  Declaratory and equitable relief, including restitution and disgorgement;

8.   For public injunctive relief as the Court may deem proper; and

9.   Awarding such further and other relief as the Court deems just, proper and equitable.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: November 14, 2025

Respectfully submitted,

By: /s/ Scott Edelsberg

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT